UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------x

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| -against- | : Docket No.: 1:22CR00007-001 |
| | : |
| THOMAS UBERTO, | : |
| | : |
| Defendant | : |

------------------------------------------------x

### Thomas Uberto's Reply Sentencing Memorandum

This memorandum is respectfully submitted in reply to the government's sentencing memorandum (Dkt. 36).

### Thomas Uberto's Entry into the Capitol

The government does not dispute that, as we noted in Mr. Uberto's sentencing memorandum, rioters broke into the Senate Wing Door and accompanying windows, as reported in the press, at 2:12 p.m. on January 6, 2021. Instead, the focus on what they describe as a "violent, second breach of that door by rioters" (Dkt. 36 at 2, 4) that they say was approximately eight minutes before Tom Uberto entered. The government is referring to the fact that after many protesters had entered the building, Capitol police blockaded the door with a piece of furniture but, approximately 9 minutes and 25 seconds before Mr. Uberto entered, a crowd pushed back into through the Senate Wing Door, forcibly pushing the police officers out of the way. By the time Tom Uberto entered however, there was a stream of people walking into the building without challenge from officers.

Mr. Uberto's own photo, a copy of which is on page 4 of Dkt. 36, shows that by the time he entered the Senate Wing Door, there was no conflagration or fighting there. The videostill on page 5 of Dkt. 36 shows Tom walking into a crowded room among

dozens of others. He is seen walking into the hallway where he took two other pictures of people walking there. Dkt. 36 at 5. No one in those pictures or in any of the video footage produced by the government of Mr. Uberto's walk through the building shows anyone confronting or attacking officers– or anyone else.

The government's attempt to link the defendant with those who pushed into the building more than nine minutes before he walked in is unfair. Tom was not seen to have been near the door when others pushed in through the entrance before he walked in. On the other hand, Tom Uberto has acknowledged that he knew and understood he was not lawfully permitted to enter the building when he did. That is the crime he admitted he committed, for which he has fully accepted responsibility, and for which the Court will impose a sentence.

**Thomas Uberto's May 2021 Facebook Post and Possession of Videos**

The government argues that, because Tom Uberto posted on a Congress member's Facebook page thanking her for "standing up to" another member of Congress and others he characterized as "criminals" and asserting that Mr. Trump won the election, he shows a "complete lack of remorse." Dkt. 36 at 2, 8, 13-14.

The Supreme Court has emphasized that Americans have the right to express their political opinions and to criticize politicians or public figures.

> The sort of robust political debate encouraged by the First Amendment is bound to produce speech that is critical of those who hold public office or those public figures who are "intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large." *Associated Press v. Walker decided with Curtis Publishing Co. v. Butts*, 388 U. S. 130, 164 (1967) (Warren,

2

C.J., concurring in result). Justice Frankfurter put it succinctly in

*Baumgartner v. United States*, 322 U. S. 665, 673-674 (1944), when he

said that "one of the prerogatives of American citizenship is the right to

criticize public men and measures." Such criticism, inevitably, will not

always be reasoned or moderate; public figures as well as public officials

will be subject to "vehement, caustic, and sometimes unpleasantly sharp

attacks," New York Times, supra, at 270. "The candidate who vaunts his

spotless record and sterling integrity cannot convincingly cry 'Foul!' when

an opponent or an industrious reporter attempts to demonstrate the

contrary."

*Hustler Magazine v. Falwell*, 485 U.S. 46, 51-52 (1988) quoting *Monitor Patriot Co. v.*

*Roy*, 401 U. S. 265, 274 (1971). Mr. Uberto's criticism of a member of Congress cannot

be lawfully used to call for imprisonment, and to apply this as a sentencing factor

against him would be unconstitutional.  U.S. Const., Amend. I.  The government's

argument dangerously approaches the seeking of punishment for adherence to political

beliefs. Mr. Uberto will be sentenced for the offense conduct, for which he expressed

remorse to the probation officer,[1] to Gary Anderman, Chair of his Fire District, and to

Emily Uberto, his wife. He himself wrote to the Court that he regrets his foolish decision

to enter the Capitol, vowed not to attend more political rallies, and now avoids even

talking about politics.

　　The fact that, in May 2021, Mr. Uberto wrote to a Member of Congress that he

agreed with her that the 2020 election was stolen is not a crime, even if his belief was

---

[1]　　"During the presentence interview, the defendant agreed with the conduct described in the Statement of Offense as presented to the Court prior to his guilty plea. The defendant also stated he is very sorry for his actions and regrets entering the Capitol Building." PSR ¶16.

false or wrong. Again, Mr. Uberto is not before the Court for espousing political beliefs, but instead for unlawfully parading in the Capitol. His interest in politics has indeed subsided, but, in any event, he has a right to his views even if others disagree.

The government also focuses on two videos "depict[ing] rioters" that Mr. Uberto downloaded and presumably watched sometime after January 6, 2021. The government characterization of these videos as "trophies" is particularly misplaced and unfair. See Dkt. 36 at 7-8. The government argues that, because Tom has these videos "on his phone," he knew that "people moving throughout the Capitol were not respectfully touring the building; they were yelling and causing damage." Dkt. 36 at 11. But Tom Uberto did not take those videos; they do not show what he saw while he was in the Capitol Building; he is not seen in them.

The government's argument that "his maintaining videos of the riot on his phone show the need for specific deterrence" (Dkt. 36 at 14) amounts to unconstitutionally seeking punishment for the possession of films or reading material, and to apply this as a sentencing factor against him would be violative of the First Amendment. The Supreme Court has held that citizens have the right to receive information and ideas in the privacy of their own homes. See *Stanley v. Georgia*, 394 US 557, 564-66 (1979) ("If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch.") It is likely that most Americans have watched videos of the events of January 6, 2021 including as broadcast by a Committee of the House of Representatives. Mr. Uberto's possession of these videos casts no light on his culpability for the instant offense and is not a proper factor for the Court to consider in determining his sentence.

## Conclusion

The defense deems it unnecessary to raise every disagreement we have with the government's sentencing memorandum in this filing. Several of those arguments can be raised before the Court at the sentencing proceedings. This memorandum focuses, instead, on a few arguments we respectfully submit should not be considered by the Court in determining what sentence is sufficient, but not greater than necessary, for Mr. Uberto. Jail is not the answer in every case, not even in the case of every January 6 defendant.

Dated: December 5, 2022
White Plains, New York

Respectfully,

/s/Richard D. Willstatter (PHV)
RICHARD D. WILLSTATTER
*Attorney for Thomas Uberto*

## CERTIFICATE OF SERVICE

I hereby certify that the instant Sentencing Memorandum was served on all counsel of record this 5th day of December, 2022 via ECF.

/s/Richard D. Willstatter (PHV)
RICHARD D. WILLSTATTER